Phillip Paul Weidner
Weidner & Associates, APC
943 West Sixth Avenue, Suite 300
(907) 276-1200
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CHRISTOPHER J. McINTYRE,            )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
                                    )
BP EXPLORATION & PRODUCTION, INC.,  )
BP AMERICA PRODUCTION COMPANY,      )
JOHN DOES 1-20,                     )   Case No. 3:13-cv-00149-SLG
                                    )
          Defendants.               )
                                    )
                                    )
_____   )

## SECOND AMENDED COMPLAINT

     Comes now Plaintiff CHRISTOPHER J. MCINTYRE, by and through

counsel, Phillip Paul Weidner of Phillip Paul Weidner &

Associates, APC, and hereby states, claims, pleads, alleges and

complains as his cause(s) of action in the instant matter of

follows;

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

# I. JURISDICTION and PARTIES

1.      At all times relevant hereto, Plaintiff Christopher McIntyre, was and is a resident of the State of Alaska, located within the Third Judicial District. Plaintiff Christopher McIntyre was and is the victim of the culpable conduct of the Defendants herein, as he has suffered past economical damages and will continue to suffer economical damages as a result of said culpable conduct.  This culpable conduct of Defendants includes that, as stated in the causes of action set out, infra, including breach of contract, breach of implied contract, unjust enrichment, fraud, appropriate of trade secrets and rights, appropriation of patent secrets and rights, in reference to his unique ideas, innovations, designs, concepts, devices, calculations, inventions, methods, which he provided to the Defendants, which they utilized and/or misappropriated, said provision to the Defendants in circumstances including reasonable expectations of confidentiality, compensation and protection of trade secrets and patent rights, by which he was, and is, entitled to the relief sought, and for which they  have refused and are refusing to compensate him; including great benefit to the Defendants so as to constitute unjust enrichment and so as to constitute such culpable conduct by the Defendants.

Weidner & Associates

330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

To the best of Plaintiff's knowledge, information and belief, at all times relevant hereto, the Defendant(s), BP EXPLORATION AND PRODUCTION COMPANY, INC. was and is a business entity doing business in, and located in the Third Judicial District, State of Alaska and/or doing business in the United States of America, so as to touch and concern the State of Alaska, and communicated with Plaintiff and solicited and requested proposals and input and information from Plaintiff within the Third Judicial District of Alaska, which solicited and requested and elicited the information and conduct referenced in paragraph 1. supra, and herein.

2.    By naming said Defendant(s), Plaintiff intends to sue all culpable predecessors and successors in interest of said Defendant(s); subsidiaries, subdivision, agents, and/or affiliated companies of said Defendant(s), all holding companies of said Defendant(s), and the predecessor(s) and successor(s) in interest and related culpable person(s) and culpable business entities of same, and all culpable agents, servants, and employees, for their culpable conduct complained of herein.

3.    To the best of Plaintiff's knowledge, information and belief, at all times relevant hereto, the Defendant(s), BP AMERICAN PRODUCTION COMPANY was and is a company doing

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

business in and located in the Third Judicial District, State of Alaska and/or doing business in the United States of America which touched and concerned the State of Alaska, and communicated with Plaintiff and solicited and requested said proposals and information and input from Plaintiff within the Third Judicial District of Alaska. By naming said Defendant(s), Plaintiff intends to sue all culpable predecessors and successors in interest of said Defendant(s), subsidiaries, subdivision(s), agents, and/or affiliated companies of said Defendant(s), all holding companies of said Defendant(s), and the predecessor(s) and successor(s) in interest and related culpable persons and culpable business entities of same for their culpable conduct complained of herein.

4. Defendants, JOHN DOES 1-10, Individually and as Officers, Agents, Directors, and/or Employees and/or Independent Contractors of Defendants were director(s) and/or officer(s), and/or employees of and/or employed by and/or independently contracted by the Defendants BP Exploration and Production, Inc. and/or BP America Production Company and are and/or were individuals doing business in the State of Alaska and/or doing business in the United States of America to touch and concern the State of Alaska and were acting in the Course and/or Scope of

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

their Employment and/or Agency and/or contract(s) at the time the Plaintiff entered into a contract or implied contract with said Defendants and/or provided information and input in response to said proposal(s) and request(s) for information and input. Suit is brought as to said Defendants and as to related Defendants individually and/or are under respondent superior liability/vicarious liability. John Does 1-10 and 11-20 and the BP Defendants acted in a negligent and/or willfully reckless and/or willful and wanton and/or fraudulent manner so as to breach duties owed to Plaintiff in a culpable fashion with intention and/or reckless and/or willful disregard of the consequences and which breach was and/or is a proximate cause of and/or substantial factor in causing Plaintiff's damages.

5.      Defendants, JOHN DOES 11-20 are corporations and/or business entities and/or partners who are and/or were entities doing business in the State of Alaska and/or doing business in the United States of America to touch and concern Alaska and were acting individually and/or vicariously directly and/or via acts of their employees and agents in the course and/or scope of their employment and/or agents at the time the Plaintiff entered into a contract or implied contract with said Defendants and

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

produced said information and input.  Suit is brought as to said Defendants individually and under respondent superior liability/vicarious liability.

6.      Plaintiff by naming said Defendant(s), intends to sue all predecessors and successors in interest of said Defendant(s),  all subsidiaries, subdivision, agents, and/or affiliated companies of said Defendant(s), all holding companies of said Defendant(s), and the predecessor and successors in interest of same and all related culpable persons and culpable business entities for their culpable conduct complained of herein.

7.      It is the intent and purpose of the filing and service of this Complaint to give notice to all culpable Defendants, and to preserve Plaintiff's right to obtain relief from same, and all named Defendants are requested to notify all culpable Defendants and parties of this lawsuit and Plaintiff's causes of action.

8.      BP Exploration and Production, Inc. and BP America Production Company and their parent(s) and/or subsidiary(ies) in interest and/or predecessor(s) and/or successor(s) in interest and/or alter ego(s) of said business entity(ies) and employees and agents and JOHN DOES 1-20 are collectively referred to herein as "Defendants".

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

9.      In addition to the specific facts alleged herein,
certain exhibits [1 to 64] at Docket 52, and filed with
this complaint as Well as an Affidavit by Plaintiff
Christopher J. McIntyre, and said Exhibits and Affidavit
and the information contained therein (at Docket 52) and
the prior exhibits of record filed with Plaintiff's prior
Complaints are incorporated by reference, as if fully set
Out herein, so as to provide appropriate Notice to the
Court and to the Defendants of the factual issues in
dispute, the factual basis for Plaintiff's causes of
actions, and the material issues of law and fact that may
be in dispute so as to require that a Jury resolve said
factual issue(s), and to defeat any Motion to Dismiss under
Rule 12 and/or any Motion for Summary Judgment under Rule
56.

## II. PREAMBLE REGARDING FACTS

10.      On or about April 21, 2010, the Macondo Oil Well
(herein "Well") off of the coast, on and/or through the
ocean floor and Lower strata, and in ocean water(s) of the
Gulf of Mexico, exploded, including  subsea Blowout(s) and
explosion(s), below and on the ocean floor, and below and
between and on the surface of the ocean and drilling rig
apparatus, and further with subsea and/or subsurface damage
to the environment and uncontrolled discharge(s) of

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

hydrocarbon(s), subsea and/or subsurface, and/or on the
surface, into the ocean waters, and therein, and thus to
the ocean surface, and ocean shore, bays, tributaries, and
wetlands which caused the start of, and the continuation
of, the worst Oil Spill in the history of the United
States[said Blowout(s), explosion(s), and discharge(s)
herein "Event"].The BP Defendants "capped" the Well on July
15, 2010.

11.     Defendants BP Exploration, Inc. and/or BP America
Production Company were directly in charge of, and
responsible for the event including the Macondo drilling
rig, drilling apparatus, drilling activities, and Well, and
Blowouts and explosions of the Well and drilling platform,
the resulting discharge(s) of the oil and the pollution,
and further were vicariously in charge of and/or
responsible for same, and responsible for all culpable
conduct regarding same, by virtue of the actions of their
employees, servants, and agents, and related parties,
persons, and entities, including the other Defendants.

12.     Due to the catastrophic nature of the Event, and the
ongoing pollution, the Event constituted a major national
emergency: By which it was imperative, that person(s)such
as the Plaintiff, who would be able to assist the
Defendants in "Capping" the Well, i.e. correction of, and

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

preventing and slowing of, the Blowout and the discharge of
hydrocarbon(s) into the ocean waters, and onto the shore,
that were ongoing, and further stopping the discharge from
the Well, by providing information as solicited and
requested (by the Defendants) to assist the person(s) who
were responsible for capping the Well, and stopping the
discharge, including the Defendants' BP Exploration &
Production, Inc. and BP America Production Company in doing
so, proceed to do so, and help and provide information,
input, and knowledge as available and requested on an
emergency basis, without delay, in regard as to and
reliance on actual and/or implied and constructive
promises, assurance and expectations that the rights of
said persons, such as the Plaintiff Christopher J. McIntyre
who provided such information and input would be honored,
respected, protected, and preserved, and such information
be subject to reasonable compensation and said information
and rights, including trade secrets and patent rights not
be misappropriated or inappropriately disclosed or
published, and said persons, including the Plaintiff
Christopher J. McIntyre be reasonably compensated for same.

13. On or about May 4, 2010, through July 9, 2010 the
Defendants named herein issued solicitation(s) and
request(s) and proposal(s) and solicitation(s) for

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

information and input [proposal(s) solicitations, and requests to the public] including the Plaintiff, i.e. solicitation for proposals and information and input and suggestions from persons for appropriate response(s), and technology, to help the Defendants and related persons or entities assigned to the event, to cap the Well and stop the flow of oil and/or contain the discharge of oil into the Gulf of Mexico ocean waters and on to the shore.

14.     On or about May 11, 2010, from his home in the Third Judicial District of Alaska, Plaintiff Christopher McIntyre began corresponding to, and with, the Defendants in response to their request(s) and solicitations and proposals, intrusting the Defendants with his novel and concrete knowledge, suggestions, methods, invention, information, devices, and concepts which were not obvious, but were sufficient for reasonable implementation without significant additional embellishment regarding, how to deal with the Event and cap the Well, and contain and stop the flow and discharge of the oil from the Well. Plaintiff Christopher J. McIntyre did so with the reasonable and enforceable expectations, and in reliance, on the fact, that in these circumstances, Defendants would maintain reasonable confidentiality and act in good faith and thus would honor, respect, protect and preserve his rights,

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

ideas, input as to same and would not misappropriate or
inappropriately disclose or publish same, and would
compensate him for same.

15.     By doing so Mr. McIntyre was providing the Defendants
with his own trade secrets, his own novel and concrete
ideas, concepts, methods, invention(s) and information
which would be patentable, and valuable engineering
suggestions and information which were not obvious and were
concrete, for and from which provision of same by Mr.
McIntyre, given his reasonable expectations and reliance in
doing so, and the requests from, and benefits to the
Defendants, as matter of law, and fact, a contract and/or
implied contract and/or quasi contract and/or obligations
as to unjust enrichment duties arose and exist, and Mr.
McIntyre should have been, and should be, compensated with
due regard to the value of the contributions and benefits
to the Defendants, in light of their solicitation of same,
and with due regard to the commercial value of the
information and ideas provided as Well as his patent rights
protected, preserved, and restored, including the
reasonable revenues due from said patent(s) with Mr.
McIntyre receiving all compensation and proceeds due as to
same.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Plaintiff Mr. McIntyre initially responded as to said proposals/solicitations/requests for suggestions, concerning inserting the end of a pipe into the Riser. This has been referred to in previous complaints and/or previous correspondence as a "Riser insertion tool." The Riser insertion tool related primarily to collecting the hydrocarbon discharges while the free flow was occurring prior to shutdown. It was not an integral part of Mr. McIntyre's invention, concepts, methods and ideas as to actually capping the Well via the use of a ventable valve at the Riser connection. This "riser insertion tool" concept, although used by BP regarding collection, is not necessarily the crucial concept here, i.e. the concept regarding actually "capping" the Well. See paragraph 16.

16.   The crucial information, ideas, techniques, designs, inventions, trade secrets, concepts, devices, methods which were novel, concrete and unprecedented in the industry, and patentable and not obvious which Mr. McIntyre provided to the BP Defendants and related Defendants, on May 14, 2010, and/or the fruits of which, in fact, were utilized by the Defendants to cap the Well, which they have now misappropriated, to their own use and benefit, in an unconscionable and inequitable fashion, and further which they are now misappropriating and/or have misappropriated, to their own benefit and/or to the benefits of related

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

persons or entities, to seek a patent, is a system and
format and concept(s) and methods of capping the subsea
Well, and in particular using a method and mechanism to
install a collection and/or capping and/or shut off device,
with a ventable apparatus that could be shut off and "cap
the Well" with said component(s) connected at the Upper
Riser. See Plaintiff's, Schematic as Exhibit 3, regarding
configuration of Well apparatus. See also, Patent
Application (Exhibit 1A, 1B, and 1C) which provides;

...

**United States Patent**
**Application**
**Kind Code**
**Anderson; Paul Edward ; et al.**

**20130020086**
**A1**
**January 24, 2013**

SYSTEMS AND METHODS FOR CAPPING A SUBSEA WELL

17. **Abstract**

A method for capping a subsea WellBore comprises (a) identifying a subsea landing
site on the BOP or LMRP for connection of a capping stack. In addition, the method
comprises (b) preparing the subsea landing site for connection of the capping stack.
Further, the method comprises (c) installing a capping stack on to the subsea landing
site. Still further, the method comprises (d) shutting in the WellBore with the capping
stack after (c).

Inventors: ...

**Applicant: ...**

Assignee: **BP EXPLORATION OPERATING COMPANY**
**LIMITED Sunbury-on-Thames**
**TX**
**BP CORPORATION NORTH AMERICA INC.**
**Houston**

**....**

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

1.    A method for capping a subsea WellBore, <u>wherein a Wellhead of the subsea WellBore is disposed at the sea floor, a subsea Blowout preventer (BOP) is mounted to the Wellhead, a Lower Marine Riser Package (LMRP) is coupled to the BOP, and a Riser extends from the LMRP,</u> the method comprising: (a) identifying a subsea landing site on the BOP or LMRP for connection of a capping stack; (b) preparing the subsea landing site for connection of the capping stack; (c) installing a capping stack on to the subsea landing site; and (d) shutting in the WellBore with the capping stack after (c).

2.    The method of claim 1, <u>wherein the LMRP has an Upper end including a Riser flex joint connected to the Riser, and wherein the subsea landing site is a Riser adapter of the Riser flex joint.</u>

3.    The method of claim 2, wherein (b) <u>comprises removing the Riser from the Riser flex joint before</u> (c).

…

5.    The method of claim 3, wherein the capping stack comprises a body and a sealing mechanism, wherein the body has a central axis, a first end, a second end opposite the first end, a main Bore extending axially from the first end to the second end, and wherein the sealing mechanism is configured to seal the main Bore.

6.    The method of claim 5, wherein the capping stack comprises a BOP or a valve spool.

7.    The method of claim 5, wherein the capping stack further comprises a plurality of side Outlets, each side Outlet having a first end in fluid communication with the main Bore, a second end distal the body, and a valve disposed between the first end and the second end, <u>wherein each</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

valve is configured to control the flow of fluid through the corresponding side Outlet.

8. The method of claim 7, wherein (d) comprises actuating the sealing mechanism to a closed position.

9. The method of claim 8, wherein (d) comprises allowing each valve of the plurality of side Outlets to remain in an open position during the actuating of the sealing mechanism of the capping assembly to alleviate pressure on the WellBore.

…

16. The method of claim 1, wherein the subsea landing site is a Wellhead-type coupling at a first end of the BOP.

17. The method of claim 6, wherein the capping stack comprises a BOP having a Wellhead-type coupling at the second end, and wherein (c) comprises connecting the Wellhead-type coupling of the capping stack to the subsea landing site.

18. The method of claim 5, wherein (c) comprises using a perforated Riser joint coupled to the capping stack to install the capping stack, and allowing hydrocarbons to flow through a plurality of holes in the perforated Riser joint.

…

20. The method of claim 1, further comprising: (e) relieving excessive WellBore pressure after (d).

…

33. The method of claim 32, further comprising: (g) shutting in the WellBore with the second BOP after (f).

…
(Emphasis added)

18. The information and input provided by Mr. McIntyre

regarding his unique novel, concrete, ideas, innovations,

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

designs, calculations, devices, inventions, methods, which were not obvious, and he provided to the Defendants, as so provided by Mr. McIntyre to the BP Defendants and related Defendants, was information regarding his unique and novel and concrete and not obvious ideas, innovations, designs, devices, calculations, inventions, methods, which he provided in confidence to the Defendants and with said reliance on, and with the expectation of reasonable confidentiality and that he would be compensated for same, and his patent rights protected, as to a system and method and necessary apparatus for capping a subsea Well Blowout and hydrocarbon discharge.  In particular Mr. McIntyre provided information so as to allow the Defendants to successfully cap the Blown Out Macondo Well, with a ventable valve component that could be shut off to withstand pressure and thus cap the Well with a component connection at the Riser.

19.    Counsel is mindful of the fact that for those not possessing at the Outset detailed knowledge of the drilling industry, some of the issues presented in this matter may seem somewhat complex and confusing. This includes terminology as to the devices, methods and techniques suggested by Mr. McIntyre as a result of his unique, unprecedented, and non-obvious inventions and methods and

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

information he provided to BP by which they ultimately and successfully capped the Macondo Well.

20.     As an Exhibit to the Second Amended Complaint enclosed as Exhibit 1A, 1B, and 1C, incorporated therein and herein by reference, is a Patent Application by BP or persons on their behalf working with BP. Thus reveals direct use of Mr. McIntyre's "landing site" and/or "landing site preparation," i.e. connection at the Riser and a "ventable valve" above the connection, that could be closed off under pressure to cap the Well, but if need be, used without pressure for collection purposes of spewing hydrocarbon, i.e., collecting the discharge of hydrocarbons, while the valve was "venting," and/or to avoid a "broach" of the sub-ocean floor strata, i.e. a Riser connection idea with a ventable valve and is direct evidence of the merits of Plaintiff's case i.e. that BP fraudulently utilized the concept which Mr. McIntyre provided to them. The patent application is prima facie proof that Mr. McIntyre ideas, method and inventions were unique, novel, non-obvious and feasible and "concrete" to be readily used (as it was by BP) without substantial embellishment.

21.     The simplest way to understand [what is potentially a seemingly complicated, confusing situation] Re: Mr. McIntyre's provision to the BP Defendants of his unique, novel and

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

crucial solution, invention(s), and method(s) to capping the runaway "Macondo Blowout" in the Gulf of Mexico [which the BP Defendants relied on in capping the Well] is that:

(1)    McIntyre's idea was to avoid dismantling the existing compromised Blowout Preventer Stack (BOP) components which were compromised (due to the lateral forces of the drilling rig sinking) and were mounted hydraulically (as attempting to dismantle same would potentially be even more catastrophic and result in a much greater free flow);

(2)    That is, Mr. McIntyre suggested the BP Defendants connect an appropriate light weight capping tool or mechanism <u>with an appropriate connection to a location above the BOP Stack i.e. above the LMRP</u> (which LMRP is the top half of the BOP Stack); <u>at the Riser;</u>

(3)    The actual capping mechanism would be a "ventable valve" to allow the Well flow to be "vented" and then to allow closing of the valve to withstand pressure and "cap" the Well, but to also allow the Well flow to "vent" if necessary, with collection above the venting valve of the spewing hydrocarbons and/or to vent during a hurricane, to avoid a subsea floor, "broach" of the strata, with an uncontrollable Blowout and discharge.

(4)    This connection would be at where the Riser attaches to the LMRP;

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

(5)     The flange between the LMRP and the Riser is called the "Flex Joint Flange";

(6)     Thus it would be crucial to make a connection with a "new" un-deformed riser at the Flex Joint Flange (which is bolted on, so that a mechanical connection can be used to connect to the new un-deformed Riser);

(7)     This would involve unbolting the deformed Riser at the Flex Joint Flange and bolting and installing a new "straight [un-deformed] Riser", bolted subsea to the Flex Joint Flange i.e., a "landing site" regarding the Riser, to in turn allow an appropriate mechanical mechanism to be utilized for the Riser to be connected to the ventable valve shut off system;

(8)     Thereby avoiding further compromise of the existing BOP and LMRP and Well head connection (which would most likely not allow reconnection) with catastrophic "free flow" potential.

(9)     THIS IS WHAT BP DID.

22.     Concerning the schematic of the "components" [Exhibit 3] it is important to focus on their order and condition: 1) Well Head on the ocean floor; 2) BOP with hydraulic connection to Well Head; 3) BOP failed and compromised; 4) If the Blow Out preventer (BOP) was disconnected at the Well Head (which was in any event not

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

practical and most likely not considered) there would be free flow – the Blowout and rig sinking had compromised and/or deformed the BOP connection with a drill bit stuck inside; 5) Moreover, at the BOP/Well Head connection there was a "Collett" type of hydraulic connection which was impacted by lateral force from the drilling rigs sinking; 6) If disconnection was made at those junctures (BOP/Well Head Collett) or the site of the next hydraulic connection above it (said connection a hydraulic Collett connection between the BOP and LMRP)[1] there would be a significant further catastrophic free flow, and no real chance to reconnect due to deformation(s). Thus, BP most likely would never be able to reconnect hydraulically to the Well head or to the BOP due to the deformation of the components. Thus Mr. McIntyre's idea was the critical solution, i.e. to maintain the hydraulic connection(s) at the Well head and/or the connection between the BOP and the LMRP and to unbolt and disconnect the Riser flange mechanism (at the Flex Joint Flange) and bolt on a newly manufactured Riser connection (un-deformed and/or uncompromised) to attach/connect mechanically a light

---

[1] That would be the "connection" point, using classic pre-spill teachings and techniques, one would normally go to; however, deformation of the hydraulic components would make disconnect and/or reconnect most likely impossible, and thereby precipitate a catastrophic free flow.

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

weight venting valve/shut off system.  THIS IS WHAT BP DID.

This is also the unique, novel, unobvious and readily usable and concrete invention(s), system(s), and methods for which BP is now seeking a patent

23.    Mr. McIntyre's provision of confidential and unique information and inventions and methods which were unique, novel and non-obvious, included not only the referenced information as to the "landing site" and information regarding "preparation of a landing site," (at the Riser) but likewise suggestions and/or revelations and/or technical knowledge, knowing that the Well should be capped using a ventable valve, i.e. a valve that can be initialy vented, when connected at the landing site/Riser connection, and then closed off to withstand pressure and cap the Well. This concept is a part of the subject of the BP patent, which includes claims relating not only identifying and preparing the "landing site", i.e. at the Riser site, and preparation of same, to wit, the crucial connection site proposed by Mr. McIntyre, in order to cap the Well, but further the use of the embodiment of such a ventable valve, that could be used to shut off the flow from the Blow Out. It is the precise method and technique, which BP utilized, after being so suggested by Mr.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

McIntyre, to wit, a connection <u>where he suggested (at the Riser) level</u>, implementing the landing site where he suggested, implemented <u>via the disconnection of the Flex Joint Flange where he suggested</u> and bolting on a new Riser, to connect to and <u>utilize a ventable valve that could be closed off</u>, which was manifested via by BP's "capping stacks", and used to cap the Well and is now the subject of the patent.

24.     These crucial concept(s) were imparted by Mr. McIntyre to the BP Defendants, with the expectations and reliance upon appropriate protection of his novel invention, non disclosure of same, adequate compensation for same, and further, protection of his patent rights.

        The BP Defendants have now utilized Mr. McIntyre's novel, unique and non-obvious ideas inventions, concepts, and methods in a patent application (Exhibit 1A, 1B, and 1C) and accordingly Mr. McIntyre should be afforded relief not only as to reasonable and just compensation for provision of the ideas to BP, and their subsequent use thereof, and their unjust enrichment thereby, but as to enforcing his rights to a patent, and benefit there from, including correcting the inventor on the patent.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Further, as demonstrated by the Exhibits and will be further demonstrated as discovery goes forth,[2] the BP Defendants defrauded Mr. McIntyre by fraudulently representing to him that they were not utilizing his idea and invention which in fact they were doing so, and did so, and fraudulently continuing their refusal to not pay him; and fraudulently seeking to patent his ideas with others listed as the inventors.

Evidence exists at this juncture (See Exhibits and Mr. McIntyre's Affidavit, which were submitted to the Court at Docket 52) which demonstrates that due to the timing of certain meetings with BP high level executives and Government officials and further other persons working to control the spill,(and communications between same) that it was Mr. McIntyre's idea(s), and novel and unique invention(s) that precipitated the actual solution to capping the Well.

In that regard, it appears that BP has falsified documents to try and falsely claim and demonstrate, that Mr. McIntyre did not in fact provide them the genesis of the crucial solution and idea, and/or potentially to defraud the Federal Government, in the ongoing litigation

[2] Plaintiff is filling herewith, a Motion under Rule 56 to seek further discovery, for good cause, especially as to the actual use by BP of his concepts as originating from him and the timing thereof, and the true inventor regarding the patent.

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

with the Federal Government, over the timeliness of the means they had to cap the Well and efforts to do so. See Exhibits, Mr. McIntyre's Affidavit and Transcripts regarding the "Deepwater Horizon" litigation (at Docket 52).

25.    The Macondo Well had a subsea Well Bore i.e. a hole drilled through and/or beneath the ocean floor.  The Well Head of the subsea Well Bore, is at the ocean floor. Above the subsea Well Bore, attached to the Well head via a hydraulic "collect" connection, was a subsea Blowout Preventer (BOP) which was designed, normally to close tight and thus shut off, or cap, or stop, a Blowout such as occurred in the Macondo Blowout.

26.    That subsea Blowout Preventer (BOP) was mounted to the Well head.

27.    A Lower Marine Riser Package (LMRP) was hydraulically coupled via a collection to the BOP, i.e. above the BOP, with an Upper Riser ("Upper Riser") extending from the LMRP, above the LMRP from the Riser Flex Joint, to a semi submersible drill rig/drilling platform floating on the ocean surface See, Schematic of said configuration as Exhibit 3.

28.    Due to the configuration of said devices, (BOP, LMRP, Riser Flex Joint, Upper Riser) and the nature of the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Blowout, the most practical and successful way, which was a
novel way, and a concrete way and was unprecedented in the
industry and not obvious given the procedures in the
industry, (and was ultimately used by the BP Defendants
per Mr. McIntyre's suggestions and ideas), to cap the
Blowout, was to make an appropriate connection at the Upper
Riser (with a new un-deformed riser bolted at the Riser
Flex Joint), which would allow a connection for appropriate
ventable valve device(s) and setting(s) to allow
collection, and/or control and/or shut off of the
discharging hydrocarbon(s).

29.     The methods, system, unique ideas, innovations,
designs, calculations, inventions, concepts, which Mr.
McIntyre provided to the Defendants, as suggested by Mr.
McIntyre, to the BP Defendants, are and/or were novel and
concrete, and unprecedented in the industry, to do so in a
subsea fashion, as was substantially utilized by the BP
Defendants to cap the Well.

30.     These suggestion(s), invention(s), system(s),
method(s), concepts(s) ideas, innovations, designs,
calculations, which Mr. McIntyre provided to the Defendants
were used by the BP Defendants to install, what they
eventually called a "capping stack" (new BOP stacks)or
"transition spool" on top of the LMRP [Lower Marine Riser

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Package]; which LMRP is a component below the Upper Riser (See Exhibit 3). This Upper Riser served as a "landing site" on top of the original BOP, i.e. on top of the LMRP [i.e. the Upper Riser severed as a subsea connection for the new "capping stack" or transition spool i.e. BP attached new BOP(s) [at and/or with Mr. McIntyre's subsea connection at his suggested site regarding Upper Riser] so as to include Mr. McIntyre's idea(s) as set out supra, which were and/or are, unique, novel and unprecedented, and concrete.

31.    Mr. McIntyre's ideas, inventions, systems, designs, concepts, devices, and methods were novel, concrete and a product of his trade secrets and engineering ingenuity, and used by the Defendants to make such a connection to the Upper Riser, as a landing site for the new BOP Stacks and to then shut in the Well Bore with the "capping stack" or "transition spool" (i.e. a ventable valve assembly that could be closed down and withstand pressure and cap the Well), after installing the capping stack(s) on to this unique subsea landing site. Mr. McIntyre's input was an important novel and unique and unprecedented concept, design and invention, which was imparted by Mr. McIntyre to the Defendants, which allowed them to successfully cap the Well, and was the invention, method, system and suggestion,

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that the connection between any capping stack, or ventable shut off valves, be to the Upper Riser, as opposed to a method by which the Blow Out Preventer (BOP) or the Lower Marine Riser Package (LMRP) would have to be removed, hydraulically, especially given the compromised nature of the components and/or connection, including the Well head and/or the BOP and/or the LMRP and the connection between same, and their assorted hydraulic components, and the potential for catastrophic free flow.

32.     The information and input provided by Mr. McIntyre to the Defendants as to his engineering and trade secrets/ and potential suggested system, method, and relevant apparatus for capping a subsea Well, in a blow out situation, such as that presented by the Macondo Blowout, were not only utilized by the Defendants to cap the Well, but was, and/or is the basis of, a subsequently filed and/or current patent application to the benefits of the Defendants and/or related entities (see Exhibit A, 1B, and 1C), by where Defendants have and/or are seeking to misappropriate Mr. McIntyre's trade secrets and/or patent rights.

33.     At the time Mr. McIntyre imparted such information to the Defendants to allow them, to successfully cap the Blown Out Well, he had not previously disclosed such information to the public, and Mr. McIntyre disclosed the information

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

to the Defendants, in light of the national emergency
nature of the situation, with the reasonable expectations
and reliance that they would maintain confidentiality, and
Mr. McIntyre would be appropriately compensated, in a
reasonable fashion and furthermore his invention and/or
ideas, and/or trade secrets, and/or patent rights would be
protected and  not be misappropriated by the Defendants or
others, or inappropriately disclosed and published

34.    As reflected by certain evidence of record (See
Exhibits and Mr. McIntyre's affidavit at Docket 52), to be
further supplemented by appropriate discovery, although the
Defendants deny that their use of the referenced and
relevant capping, collecting and ventable valve cut off
system for the Blow Out and/or their patent application was
a result of and/or product of Mr. McIntyre's input and
suggestions, in point of fact, the Defendants use of a
device, system or concept to cap the Well and the patent
application or applications were and are as a result of Mr.
McIntyre's input and efforts, as demonstrated by certain
timing, meetings, email communications, records,
communications to the public, and use of said component(s)
by BP Exploration & Production, Inc. and BP America
Production Company, ect., in reference to the Mancondo Well

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Blow Out and pollution control effects, and the patent
application(s).

35.     It appears BP has falsified documents and evidence to
falsely portray when they developed and/or used Mr.
McIntyre's ideas and/or fabricated equipment as to same.
They did so to defeat Mr. McIntyre's claims and further as
a part of their ongoing efforts to mislead and/or defraud
the U.S. Government as to issues concerning when they had
the available technology to cap the well as opposed to
using other inappropriate methods such as "Junk Shot"
method, etcetera. (See Exhibits and Mr. McIntyre's
Affidavit at Docket 52).

36.     Note that concerning the Statute of Limitations, the
beginning of the Statue of Limitations does not actually
start at the time that Mr. McIntyre had notice that BP was
using his novel, unique and non-obvious and crucial
invention and/or ideas and/or concepts and/or methods
and/or solution in capping the Macondo Well on July 15,
2010. That may be the first time he had notice, they may
have been using same, but not the first time he received
notice they were not going to compensate him for same
and/or fraudulently claimed that it was their idea and/or
seek a patent for same and/or take other actions contrary
to his interest. The patent was not applied for until on or

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

about April 13, 2011, and apparently not published until
January 24, 2013, which may be the actual earliest kickoff
date for the Statute of Limitations.

## III. PLAINTIFF MCINTYRE'S CAUSES OF ACTION

### COUNT I

### CONTRACT

37.    Due to the circumstances in which the information and
input were solicited from Mr. McIntyre, and was received
and used by the Defendants, a contract in fact, and at law,
arose and existed for him to be reasonably compensated for
the use of his work, and for his trade secrets and/or
designs, concepts, information, and invention, and patent
rights to be protected, and not misappropriated or
inappropriately disclosed or published, and the Defendants
had, and have, a duty to honor to protect same, and the
Defendants failed and refused, and are refusing to do so,
and breached that contract, by using the information to
their substantial benefit, and refusing to compensate him
and disclosing his information, and fraudulently filing a
patent application and accordingly, he should be
compensated in a appropriate fashion due to the breach and
his patent rights preserved, protected and restored.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

## COUNT II

### QUASI CONTRACT

38.    Plaintiff hereby realleges, and incorporates by reference and incorporates by reference, all the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39.    The use of the information and/or system(s) and/or method(s)and/or design(s) and/or concept(s) and/or invention from Mr. McIntyre imparted by Mr. McIntyre to the Defendants, to cap the Well was of exceptional value and benefit to the Defendants as it was literally used by Defendants to preclude hundreds of millions of dollars in fines and/or sanctions by the U.S. Government and further millions of dollars in cleanup costs, for which the Defendants were responsible and to seek a patent worth hundreds of millions of further revenue from same and a quasis contract arose to compensate Mr. McIntyre and protect his rights, and Defendants are liable for their conduct, and should be ordered to compensate Mr. McIntyre and restore his patent rights.

### COUNT III

### UNJUST ENRICHMENT

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

40.　　Plaintiff hereby realleges, and incorporates by reference and incorporates by reference, all the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

41.　　Due to the circumstances in which the information and input was solicited by the Defendants, imparted to the Defendants by Mr. McIntyre, and the use of same, Defendants derived a substantial benefit from the same, and it is inequitable and a violation of the doctrine of unjust enrichment to not compensate Mr. McIntyre, and not to restore and protect his rights, and the Defendants should be ordered to do so.

## COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS

42.　　Plaintiff hereby realleges and incorporates by reference, all the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

43.　　Due to the circumstances in which Mr. McIntyre provided the information and input to the Defendants, in response to their solicitation and requests, and the Defendant's conduct, the Defendants misappropriated Mr. McIntyre's trade secrets, as he had a reasonable expectation of confidentially and protection, as to the use or disclosure by the Defendants, and they were not

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

previously or contemporarily, disclosed to the public, and Mr. McIntyre had a reasonable expectation that his trade secrets would not be misappropriated by the Defendants, or misused, or used or disclosed without adequate protection and compensation, and the Defendants are culpable and liable for doing so.

## COUNT V

### NECESSITY TO CORRECT INVENTOR ON A PATENT/TRUST RIGHTS

44.   Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

45.   The Defendants misappropriated Mr. McIntyre's ideas, invention, system, methods, designs, concepts in bad faith and fraudulently and without due compensation and in their own right and/or through related persons or entities misappropriating same, and applied for and/or are applying for a patent (See Exhibits 1A, 1B, and 1C) falsely claiming they and/or their agents and/or related entities or persons were the inventors, when in fact Mr. McIntyre was the inventor; accordingly, there should be a correction as to the inventor on the patent and Mr. McIntyre should have all rights of, and protection from, and ownership of the patent(s,) and the fruits of the patent(s), and all subsequently related patent(s), and proceeds related to the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

patent subject(s) of disclosure by Mr. McIntyre and/or an actual or constructive trust should be imposed on same.

## COUNT VI

### MISAPPRORIATION OF AN INVENTION AND PATENT RIGHTS

46.    Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

47.    The Defendants misappropriated Mr. McIntyre's invention(s) which were unique and concrete, and had not been disclosed to the public, and were disclosed to Defendants under the expectations and in reliance that they would be retained for Mr. McIntyre, and protected, and preserved and remain confidential, as to all rights to same including the above referenced  trade secrets and patent rights, and Defendants proceeded to misappropriate and inappropriately disclose and publish said secret rights/patent rights he had, as a result, and accordingly all trade secrets/patent rights and the fruits and proceeds thereof should be restored to Mr. McIntyre and the true inventor in the patent, be corrected, and Defendants are liable for their culpable conduct as to same.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

## COUNT VII

### FRAUD AND FRAUDULENT CONDUCT AND CONCEALMENT AS TO USE OF IDEAS AND PATENT

48.     Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

49.     The Defendants fraudulently told Mr. McIntyre they were not using his information and/or input and/or system and/or methods and/or invention(s) and/or concepts and fraudulently concealed their use to cap the Well, and Mr. McIntyre did not learn they were in fact doing so until at the earliest July 15, 2010, and the patent was not published until January 24, 2013.

50.     The fraud was both; 1) as to use of Mr. McIntyre's ideas to cap the Well and not compensate him; and 2) As to the patent and misappropriation of his patent rights.

51.     Accordingly, Defendant(s) are liable for all money due to compensate Mr. McIntyre as to said fraud, including compensation regarding use of Mr. McIntyre's inventions, and from said patent(s) and compensation for and/or

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

restoration of his patent rights and secrets, and as suit
in this matter was brought on or about July 9, 2012, all of
Plaintiffs Causes of Actions are timely and preserved.

## COUNT VIII

### FRAUD PLEAD WITH MORE SPECIFICATION

52.    Plaintiff hereby realleges and incorporates by
reference all the allegations contained in paragraphs 1
through 50 as if fully set forth herein.

53.    As set out above, Mr. McIntyre provided such
information and input as to his invention and ideas and
system and methods and design and devices and methods of
capping a subsea Well, to the Defendants with the
reasonable expectation that they would remain confidential,
and BP Defendants would compensate him for same, that they
would not unjustly enrich themselves with same, that they
would acknowledge Mr. McIntyre as the source of the
original use of same, and that they would not steal or
misappropriate or inappropriately disclose or publish his
trade secrets or patent rights, and would preserve and
protect his rights.

54.    On numerous occasions (See Exhibits and Affidavit of
Mr. McIntyre at Docket 52), the Defendants fraudulently

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

informed Mr. McIntyre that they were not using or
benefiting from his information and input.

55.     In point of fact as reflected by said Exhibits and
Affidavit of Mr. McIntyre at Docket 52 and further the
timing of the use of the system(s) and method(s) to cap the
Well, and the disclosure of the intention to use same
and/or use of same, to the Federal Government, and other
parties, and the nature of the device(s) used, by the
Defendants, the Defendants were fraudulently telling Mr.
McIntyre they were not using or benefiting from his
information and input and system and methods and invention
and/or that they would pay him for same and fraudulently
filed a patent. See Exhibits 1A, 1B, and 1C.

56.     The fraud was both; 1) as to use of Mr. McIntyre's
ideas to cap the Well and not compensate him; and 2) As to
the patent and misappropriation of his patent rights.

57.     Accordingly, Defendant(s) are liable for all money due
to compensate Mr. McIntyre as to said fraud, including
compensation regarding use of Mr. McIntyre's inventions and
methods and compensation for and/or restoration of his
patent rights secrets, and as suit in this matter was
brought on or about July 7, 2012, all of Plaintiffs Causes
of Actions are timely and preserved.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

a) It is important to recognize that perhaps part of the actual apparatus used as a "capping stack" or transition spool by the Defendants to cap the Well may not have been novel or new, but was simply existing technology.  However, it was the use of the connection at the Riser Flex Joint i.e. at the Upper Riser above the BOP and LMRP with a ventable valve which was novel, and concrete, and first suggested by Mr. McIntyre. For instance, in a report styled *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* an expert Iain Adams actually retained by BP so indicated May 10, 2013(See Exhibit 55). As a part of the fraud, in order to conceal the fact that it was Mr. McIntyre's input, suggestions, trade secrets, patent rights referencing his system and methods and appropriate apparatus for capping a subsea Well properly that was used by BP, to cap the Well, BP has falsified documents including falsifying documents maintaining certain devices were actually fabricated prior to the time they were actually engineered and fabricated. See

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibits and Mr. McIntyre's Affidavit at Docket 52.

b) Part of the fraud perpetrated by BP and still being perpetrated by BP was the fact that BP utilized other methods to attempt to cap the Well which were unsuccessful and resulted in extraordinary continuing damage and pollution at a time, when in fact they had the information from Mr. McIntyre that would allow them to successfully cap the Well.  They actually had built the device and chose not to use same, and were not appropriately disclosing same to the U.S. Government, i.e. the existence of Mr. McIntyre's information and input, the fabrication of the device, and the feasibility of using same. They are continuing with misrepresentations regarding access to and use of same, in the litigation styled *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*.  The other methods that we used and or attempted, which were unsuccessful, and not used included "junkshot" method and "Topkill" method

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

c) In order to understand the importance of Mr. McIntyre's contributions, from his input and information related to his trade secrets, engineering expertise, suggestions and system and method for capping a subsea Well and related apparatus, one must focus on the considerations BP was utilizing to cap the Well, the anticipated difficulties and potential damages for same and the timing relating to such consideration and their eventual use of Mr. McIntyre's method;

i) The Blow Out damaged the Blow Out preventers and the Riser above the BOP and the LMRP.

ii) The configuration of the Well as noted included a Well Bore, a Well head, a Lower Marine Riser Package (LMRP) coupled to and above BOP. (See Exhibit 3) The actual configuration begins with the Well head over the Well Bore, and the Lower unit of the BOP is hydraulically connected to the Well casing i.e. at the Well Head, and those connections are neither unique and/or novel and were routinely used in the industry before this accident. The LMRP which is above the lower BOP has a similar hydraulic connection.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

iii) The Riser extends from and above the LMRP. The Lower portion of the referenced apparatus, i.e. the BOP, has "sheer rams" to cut pipe, in the Lower part of the BOP, which is anticipated to operate to cut the pipe and cap the Well, and above that, annular preventers (more BOPs), The annular preventers are connected hydraulically to the Lower section of the BOP. Initial consideration was given to bring in, and placing on the malfunctioning BOP(s) and/or replacing same with hydraulic connections a new "stack" of Blow Out Preventers. That would have involved dangers from trying to disassemble the existing BOP assembly and/or replacing undue weight on the existing assemble with possible further disruption of the apparatus and exacerbated the flow of oil. This could eventually breach, at subsea the apparatus with exacerbated Well flow. For portions of the time, when efforts were on going to cap the Well, consideration was being given to this method, and continuation of the dangers thereof.

iv) When Mr. McIntyre's information was received by BP, after appropriate evaluation,

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

they switched to consideration of the connection
at the Upper Riser, which was part of the crucial
information imparted by Mr. McIntyre. In doing so
they readapted their Blow Out Preventers to go to
a "fail open" status, so the Blow Out Preventers
could be utilized in the same method and/or
manner as suggested by Mr. McIntyre to wit the
Blow Out preventers subsequently referred to as a
"capping stack" and/or "transition tool", that
could be attached to the Riser and initially vent
the oil but then be used to shut down the flowing
cap the Well.

v)   Notwithstanding the fact that BP
recognized the dangers of attempting to remove
the LMRP and/or and the further complications
that would be caused and/or complications from
placing the additional stack on the partially
removed BOP and notwithstanding the fact that
they recognized that there was and is a
reasonable certainty, of capping the Well in a
expeditious fashion using Mr. McIntyre's
information, they delayed in doing so and
proceeded with an alternative attempt of
"topkill" which exasperated the flow of the oil.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Part of the fraud involved included telling Mr. McIntyre they were not and would not be using his ideas, and/or they were not feasible, and further ongoing efforts to deceive the U.S. Government about the information they had to timely cap the Well.

## COUNT IX

### BREACH OF CONFIDENTIALITY

58.   Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59.   The defendants breached duties of confidentiality as to Mr. McIntyre and are liable for all appropriate damages caused by same.

## COUNT X

### BREACH OF FIDUCIARY DUTY

60.   Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61.   The Defendants owed Fiduciary Duty to Mr. McIntyre and breach of same and are liable for all damages caused for

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

same and should be subjected to all appropriate orders
affording relief as to same

62.     This includes the breach by Fiduciary Principals which
principals are occupying positions of trust for using
available technology for profit and the benefit of response
persons developing said technology.

### COUNT XI

**CONDUCT OF THE DEFENDANTS CONSTITUTED COMMON LAW THEFT AND THEY
ARE LIABLE FOR ALL OF THE PROCEEDS OF THE THEFT**

63.     Plaintiff   hereby   realleges   and   incorporates   by
reference all  the  allegations  contained  in  paragraphs 1
through 62 as if fully set forth herein.

64.     Conduct of the Defendants constituted common law theft
and they are liable for all of the proceeds of the theft

### COUNT XII

### MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

65.     Plaintiff   hereby   realleges   and   incorporates   by
reference  all  the  allegations  contained  in  paragraphs 1
through 64 as if fully set forth herein.

66.     The   conduct   of   the   defendants   constituted   the
misappropriation of confidential information and are liable
for all damages due to same subjected to all appropriate
orders affording relief as to same.

### COUNT XIII

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

67.    Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68.    Due to the circumstances of the events in question the defendants owed the duty of good faith and fair dealing to Mr. McIntyre which they have and continue to violate accordingly they are liable for all damages caused by same and are subjected to all appropriate orders affording relief as to same.

## COUNT XIV

## PUNITIVE DAMAGES

69.    Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70.    The conduct of the defendants was unlawful, malicious, reckless and with reckless indifference to another person. Accordingly, each of the defendants are subjected to punitive damages in an appropriate amount with due regard to the nature of the culpable conduct, and the profits derived in a sufficient amount to chill such conduct in future with the due regard of the net worth of said defendants as well as the profits obtained from said conduct.

## COUNT XV

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

## INJUNCTION

71.     Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.     The rights of the Plaintiff Mr. McIntyre and his unique, novel, concrete and non-obvious inventions, methods, concepts and ideas including his patent rights are original and unique, and Mr. McIntyre is entitled to a injunction precluding and preventing the Defendants from maintaining they have proprietary interest(s) or patent rights to same and precluding the Defendants from asserting or profiting from any such rights or patents or using any such devices/patented devices without license.

## COUNT XVI

### FACTUAL DISPUTE(S) AS TO MATERIAL FACTS AND NECESSITY OF RESOLUTION BY A JURY

73.     Plaintiff hereby realleges and incorporates by reference all the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     Although Defendants claim, that they did not utilize Mr. McIntyre's systems and/or methods for capping a subsea Well, and his invention, in capping the Blowout of the Macondo Well, in point of fact material dispute(s) of

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

fact(s) exist as to same, and the natures of his
disclosures to the BP Defendants, and his reasonable
expectations and reliance, which needs to be resolved by a
Jury. This includes material disputes of fact that exist,
given the exhibits filed herewith, and responsible
interpretation of same, and by information and evidence to
be developed, disclosed and presented via the normal
delivery process.

## XVII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the following relief be
granted after appropriate proceedings and jury trial and
verdict and judgment.

1. Compensation in the appropriate amount in excess of
   1,000,000.00 (one million dollars);

2. A Constructive Trust be imposed on all the proceeds
   derived from and/or benefited by the Defendants from
   their culpable conduct, said Trust to be to the
   benefit of Mr. McIntyre, including a Constructive
   Trust regarding patent(s) and patent(s) rights;

3. Full restoration of all patent rights;

4. Correction of the Patent(s) to properly show Mr.
   McIntyre as the Inventor and Owner of the Patent(s)

5. An injunction against BP asserting patent rights to
   the inventions and rights of Mr. McIntyre;

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

6. An injunction against BP as to asserting any proprietary interests in the inventions of those of Mr. McIntyre, or the patents or using or profiting from same, including using any said devices without authorization and/or license from Mr. McIntyre

7. For punitive damages in the appropriate amount with due regard to the nature of the culpable conduct and the net worth of the defendants so as to chill and deter similar conduct in the future

Such other further relief as is just and equitable.

RESPECTFULLY SUBMITTED this 17th day of July, 2014.

                    /s/ Phillip Paul Weidner
                    WEIDNER & Associates, APC
                    330 L Street, Suite 200
                    Anchorage, AK 99501
                    Phone (907) 276-1200
                    Fax (907) 278-6571
                    E-mail: pmaughan@weidnerjustice.com
                    ABA No. 7305032

CERTIFICATE OF SERVICE
I hereby certify that on July 17, 2014, a copy of the foregoing was served electronically via ECF on the following:

Susan Orlansky                      Jeffrey M. Feldman
Susan Orlansky LLC                  Summit Law Group
500 L Street, Suite 300             315 Fifth Avenue SOuth, Suite 1000
Anchorage, Alaska 99501             Seattle, WA 98104
Tel: (907) 222-7117                 Tel: (206) 676-7000
Fax: (907) 272-7199                 Fax: (206) 676-7055
orlansky@frozenlaw.com              JeffF@SummitLaw.com

Paul D. Collier                     Jeffrey Bossert Clark

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Matthew V. Topic                    Dominic E. Draye
KIRKLAND & ELLIS LLP                KIRKLAND & ELLIS, LLP
300 North LaSalle                   655 Fifteenth Street, N.W.
Chicago, IL 60654                   Washington, DC 20005
Tel: (312) 862-2000                 Tel: (202) 879-5000
Fax: (312) 862-2200                 Fax: (202) 879-5200
Paul.collier@kirkland.com           Jeffrey.clark@kirkland.com
Matthew.topic@kirkland.com          Dominic.draye@kirkland.com


s/ Phillip Paul Weidner

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

SECOND AMENDED COMPLAINT
McIntyre v. BP, et. al., Case No. 3:13-cv-00149-SLG