# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTOPHER J. McINTYRE,<br><br>Plaintiff,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY, JOHN DOES 1-20,<br><br>Defendants. | Case No. 3:13-cv-149 RRB<br><br>**\*\*AMENDED \*\***<br>Order Regarding Pending Motions And Granting Motion to Dismiss<br><br>Docket Nos. 87, 126, 127 |

## I. INTRODUCTION

Before the Court is BP Exploration & Production, Inc. (Defendants") with a motion to dismiss for failure to state a claim at Docket 87. Plaintiff McIntyre ("Plaintiff") opposes the motion at Docket 120 and Defendants reply at Docket 125. Plaintiff has also moved for oral argument on this matter at Docket 126 and moved for leave to file a surreply at Docket 127. **II.**

## II. BACKGROUND

This matter centers on the Macondo Oil Well (herein "Well") in the Gulf of Mexico, which was owned and operated by Defendants. On April 21, 2010, an explosion occurred at the Well which resulted in the uncontrolled leaking of oil into the surrounding coastal waters.[1] When

---

[1] Docket 86 at 7.

initial efforts to stop the flow of oil failed, Defendants solicited ideas, suggestions, and input from the general public to address the problem.[2] Defendants solicited public input and suggestions from May 4, 2010, through July, 9, 2010, even creating a hotline and website to process public response.[3] Plaintiff alleges that beginning on May 11, 2010, he responded to Defendants' request by telephone and by online submission of drawings illustrating potential methods for capping the Well.[4] Defendants' representatives responded to Plaintiff's contact, which by Plaintiff's account ranged from asking for additional details, to noting a similar approach was already under consideration or implementation, to even stating that Plaintiff's suggestions were not viable.[5] Plaintiff's last correspondence was in an email on July 11, 2010, and Defendants' last response was on July 6, 2010. During the same period as Plaintiff's communications with Defendants' representatives, Defendants held several internal meetings and email exchanges regarding potential ideas to cap the Well, which led to several failed capping attempts.[6]

On July 15, 2010, the Well was finally capped by Defendants. Based on the method used to cap the Well, Defendants filed U.S. Patent Application No. 2013/0020086, titled "Systems and Methods for Capping a Subsea Well," which was published on January 24, 2013, making no mention of Plaintiff.[7] The application is pending before the United States Patent and Trademark

---

[2] Docket 86 at 9-10.
[3] *Id*.
[4] Docket 52 at 13, Docket 86 at 10.
[5] Docket 52, Exhibit 4 at 7-11, 20-21.
[6] Docket 52 at 16-34.
[7] Docket 86, Exhibit 16; Docket 52, Exhibit 1.

Office. Plaintiff has not received any compensation, credit, or acknowledgment from Defendants for the use of his submitted ideas in the eventual capping of the Well or the patent application. Plaintiff filed suit against Defendants in Alaska Superior Court and this matter was properly removed to federal court based on diversity jurisdiction.[8]

### III. STANDARD OF REVIEW

A motion under Federal Rule of Civil Procedure 12(b)(6) may be granted "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."[9] In deciding a motion, not only must a court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff.[10] In short, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[11] A court should not look to "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[12]

### IV. DISCUSSION

Plaintiff has asserted numerous causes of action in his Second Amended Complaint, all of which Defendants seek to have dismissed. The Court addresses these causes of action, identified by Plaintiff as Counts I through Count XIV.

---

[8] Docket 1.
[9] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).
[10] *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992) (*citing Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).
[11] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal citations omitted).
[12] *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## A. CONTRACT (COUNT I)

Plaintiff has alleged a breach of contract by Defendants.[13] In order for there to be a breach of contract, there must first be the formation of a contract. In the state of Alaska, "[t]he formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[14] Plaintiff does not allege any specific solicitation by BP directed at Plaintiff, only news reports and informational bulletins which advertise contact information to allow people to volunteer or provide ideas.[15] Moreover, Plaintiff has not alleged any response from Defendants that would suggest a "meeting of minds" on any form of essential contract terms.[16] Plaintiff's Breach of Contract claim (Count I) is therefore dismissed.

## B. QUASI CONTRACT (COUNT II) AND UNJUST ENRICHMENT (COUNT III)

In addition to breach of contract, Plaintiff has asserted both a claim for a breach of a quasi-contract (Count II) and unjust enrichment (Count III).[17] In Alaska, "[t]he concepts of quasi-contract, unjust enrichment, contract implied in law, and quantum meruit are very similar and interrelated.[18] Unjust enrichment is not in and of itself a theory of recovery, but rather a

---

[13] Docket 86 at 30.

[14] *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997).

[15] Docket 52 at 10.

[16] *Lewis v. Lewis*, 285 P.3d 273, 275 (Alaska 2012); *Labrenz v. Burnett*, 218 P.3d 993, 998 (Alaska 2009); *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 666 (Alaska 2002).

[17] Docket 86 at 31.

[18] *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1143 (Alaska 1996) (*citing Alaska Sales & Service, Inc. v. Millet*, 735 P.2d 743, 746 n. 6 (Alaska 1987).

necessary factor in establishing the need for restitution under a quasi-contract theory.[19] Accordingly, Plaintiff's Unjust Enrichment cause of action (Count III) is dismissed as an individual claim and subsumed into the Court's analysis of the Quasi-Contract cause of action (Count II).

The courts in Alaska require the following elements for a quasi-contract cause of action:

1) a benefit conferred upon the defendant by the plaintiff;

2) appreciation by the defendant of such benefit; and

3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.[20]

Quasi-contracts are in fact judicial constructions. The need for restitution that arises is not based upon any objective or even subjective agreement between the parties.[21] Plaintiff has asserted that the ideas he provided Defendants through his submissions and drawings were used in Defendants' eventual successful capping of the Well on July 15, 2010, and in the patent application pending before the United States Patent and Trademark Office.

While Plaintiff has stressed the "enrichment" of Defendants as a result of capping the Well and the potential patent, Plaintiff has failed to sufficiently plead or otherwise establish that he conferred an actual benefit upon Defendants. By Plaintiff's own admission there are additions, modifications, and outright differences between his proposal on May 14, 2010, and the evolution of Defendants' ultimate method for capping the Well.[22] Plainly stated, there are minimal

---

[19] *Alaska Sales & Service*, 735 P.2d at 746.
[20] *Reeves*, 926 P.2d at 1143 (citation omitted).
[21] *Id.*
[22] Docket 52 at 25.

similarities between the ideas submitted by Plaintiff and the final capping method utilized by Defendants. Moreover, the Court agrees with Defendants' position that Plaintiff's ideas were not "sufficiently developed to be ready for immediate use without additional embellishment," as they lack any specifications, dimensions, materials, operating limits, or other critical engineering detail essential to implementation.[23] This is not the only deficiency in Plaintiff's claim. Plaintiff's idea, as submitted to Defendants, also lacks the necessary characteristics to be a "protected idea."

For an idea to be protectable under a property theory the idea must possess "property-like traits."[24] Courts evaluate "ownership" of an idea by evaluating the elements of novelty and originality, which "distinguish protectable ideas from ordinary ideas that are freely available for others to use."[25] Plaintiff has argued that his idea was a property right misappropriated by Defendants.[26] In *Reeves v. Alyeska Pipeline Serv. Co.* the Alaska Supreme Court held that ideas are not usually considered as property, as it implies something owned and possessed to the exclusion of others.[27] The *Reeves* court held that an idea for a visitor center near the Trans-Alaska Pipeline System lacked novelty or originality and it therefore could not be conferred by the plaintiff. The court held that without originality or novelty there was no right of possession in

---

[23] Docket 89 at 13.
[24] *Reeves*, 926 P.2d at 1143.
[25] *Id.*
[26] Docket 120 at 46.
[27] Reeves, 926 P.2d at 1143.

the idea, and without a right of possession the idea cannot be said to be conferred by the plaintiff regardless of how beneficial it may be.[28]

Plaintiff's submission to Defendants on May 14, 2010, does contain one similarity to Defendants' ultimate capping methods, which Plaintiff asserts is the key to the capping of the Well and was derived from his idea.[29] This is the "shutoff" valve in Plaintiff's drawing, which Plaintiff now refers to as a "ventable valve."[30] While Plaintiff characterizes this idea as a "unique, novel, unobvious and readily usable and concrete" idea, the Court disagrees.[31]

Plaintiff's submission did not provide any detail on how the "shutoff" operates nor even the type of valve that should be used. Absent any detail on the mechanics or technical characteristics of the shutoff valve itself, the Court can only understand Plaintiff to be asserting that the very idea of the valve—that allows for regulated venting and shutoff of the well—is his unique and original idea. The Court finds this assertion unsupported and unpersuasive. Anyone with experience in even household plumbing, let alone oil wells and pipelines, is aware of the concept of a shutoff valve. Anyone familiar with a garden hose has experienced the concept of a valve that can regulate the flow of fluid and ultimately shutoff that flow under pressure. Such a common feature in piping, regardless of the terminology Plaintiff uses to describe its function, can hardly be considered a unique or novel idea. Similar to the court in *Reeves*, this Court finds that even if Plaintiff's idea inspired Defendants' ultimate capping method, Plaintiff has failed to demonstrate that his idea was sufficiently original and novel to confer a benefit to Defendants.

---

[28] *Id.* at 1143-44.
[29] Docket 86 at 17.
[30] Docket 54, Exhibit 4 at Docket 86 at 18; Docket 120 at 57.
[31] Docket 86 at 21.

Without a benefit conferred, Plaintiff has failed to meet the elements necessary to establish a quasi-contract cause of action. Plaintiff's Quasi-Contract claim (Count II) is therefore dismissed.

### C. MISAPPROPRIATION OF TRADE SECRETS (COUNT IV)

Under Alaska's Uniform Trade Secrets Act, a trade secret can only exist if it "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[32] Plaintiff argues that he assumed that his communications would be secret and he would be compensated. However, Plaintiff has not alleged any basis that sufficiently supports this assumption. Plaintiff argues that a confidentiality agreement would have been unreasonable, Defendants had self-imposed restrictions requiring confidentiality, and the existence of a national emergency excuses his absence of any affirmative efforts to ensure the secrecy of his ideas submitted to Defendants.[33]

While the pressing nature of events and the parties involved may have made a formal confidentiality agreement unreasonable, it does not allow for the proprietor of an alleged trade secret to unilaterally create a confidential relationship without the knowledge or consent of the party to whom the secret is disclosed.[34] Defendants also fielded contemporaneous responses from other people who wanted to volunteer time, efforts, or even ideas in order to help with the very public process of attempting to cap the Well.[35] Plaintiff has not argued, nor do his communications with Defendants reveal any basis for Defendants to have reason to believe, that the information he provided was confidential and different from information freely disclosed by

---

[32] AS 45.50.940(3)(B).
[33] Docket 120 at 32-33.
[34] *Phillips v. Frey*, 20 F.3d 623, 632 (5th Cir. 1994).
[35] Docket 52, Exhibit 6.

other interested parties. Plaintiff also fails to demonstrate how Defendants' procedures and policies for the public involvement somehow bound them to confidentiality. In fact, as Defendants point out, Plaintiff was actually informed on May 14, 2010, that any ideas or information submitted would be forwarded to unidentified parties for review and analysis, indicating submissions may not remain strictly under the control of Defendants.[36]

Additionally, Plaintiff neglects other means by which he could have put Defendants on notice and ensured secrecy of his ideas rather than in a formalized agreement, such as including language in his communications with Defendants that noted the confidential nature. This method of ensuring secrecy was readily apparent to Plaintiff, as he included such language in subsequent correspondence to NOAA communications team member Justin Kenney. In his email on June 19, 2010, Plaintiff provides a copy of his ideas and submissions to BP and directly states that he now does not want his ideas to be public knowledge.[37] Plaintiff's disclosure of his ideas to another party aside, this email shows Plaintiff to have been aware of a means to employ privacy if he so desired.

Plaintiff's assumptions and circumstances do not change the fact that he has simply not alleged any efforts on his part, reasonable or unreasonable, to maintain the secrecy of his idea and has not established why Defendants should have known that his information was confidential. Without either an express or an implied understanding of confidentiality, and in the absence of efforts to maintain the secrecy of his ideas, Plaintiff has not sufficiently established

---

[36] Docket 52, Exhibit 4 at 2.
[37] Docket 52, Exhibit 4 at 19.

the existence of a trade secret. Therefore, without a trade secret there can be no misappropriation and Plaintiff's cause of action for Misappropriation of Trade Secrets (Count IV) is dismissed.

### D. FRAUD (COUNT VII AND COUNT VIII)

Plaintiff has also alleged a claim of fraud by Defendants.[38] Plaintiff's fraud claim is inadequately pled because the Second Amended Complaint does not allege how any particular representation by BP induced reliance—let alone justifiable reliance—on the part of Plaintiff.[39] Plaintiff has only pled damages resulting from the use of his alleged idea, not damages resulting from reliance on or injury from misrepresentations by Defendants. Plaintiff's claim of Fraud (Counts VII and VIII) is dismissed.

### E. BREACH OF CONFIDENTIALITY (COUNT IX)

As Defendants have noted, Plaintiff has not distinguished this claim from his claim for misappropriation of trade secrets. Moreover, Plaintiff has not plausibly alleged the existence of any agency relationship between the parties giving rise to the alleged duties to maintain a principal's confidences."[40] Plaintiff has plead neither a manifestation by Plaintiff to have Defendants act on his behalf, nor consent by Defendants to act as such.[41] Plaintiff's claim for Breach of Confidentiality (Count IX) is also dismissed.

---

[38] Plaintiff has plead both Fraud (Count VII) and Fraud Plead with More Specification (Count VIII). In federal court, Rule 9(b) requires that fraud must be plead with particularity in addition to the plausibility standard of Rule 8. As such Plaintiff's Count VII and VIII are treated as a single claim of fraud.

[39] *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (citation omitted).

[40] Docket 12 at 40.

[41] *See* Restatement (Second) of Agency § 15; *Bruton v. Automatic Welding & Supply Corp.,* 513 P.2d 1122, 1126 (Alaska 1973).

### F. BREACH OF FIDUCIARY DUTY (COUNT X)

Plaintiff has also raised a claim of breach of fiduciary duty. In Alaska, "a fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. . . generally defined by a level of trust beyond that in ordinary business relationships."[42] Plaintiff has not plausibly alleged even the existence of a business relationship with Defendants nor a relationship with a level of trust beyond that. Plaintiff's claim for Breach of Fiduciary Duty (Count X) is dismissed.

### G. MISAPPROPRIATION OF CONFIDENTIAL INFORMATION (COUNT XII)

Plaintiff has attempted to raise the misappropriation of confidential information as an additional count, distinct from his misappropriation of trade secrets (Count IV). Defendants have argued that Count IV and XII are indistinguishable and therefore Count XII should be subsumed within the Court's consideration of Count IV. Plaintiff has asserted that confidential information of a commercial value may not rise to the level of a trade secret and is distinct.[43] The Court agrees with this contention by Plaintiff, however this does not cure a deficiency in Plaintiff's claim similar to that of the misappropriation of trade secrets. Plaintiff has still not sufficiently pled facts that give rise to a confidential relationship established between the parties, or established that the information provided to Defendants was confidential. Plaintiff's claim of Misappropriation of Confidential Information (Count XII) is dismissed.

---

[42] *Munn v. Thornton*, 956 P.2d 1213, 1220 (Alaska 1998)
[43] Docket 120 at 41.

### H.  PUNITIVE DAMAGES (COUNT XIV)

A claim for punitive damages under Alaska law requires alleged conduct that is outrageous or recklessly indifferent to the interests of another.[44] Additionally, punitive damages are generally not recoverable for breach of contract actions without the presence of a cognizable tort.[45] Plaintiff has not plausibly alleged any conduct by Defendants that rises to the level of outrageous or recklessly indifferent. Plaintiff's claim for Punitive Damages (Count XIV) is therefore dismissed.

### I.  FACTUAL DISPUTES AS TO MATERIAL FACTS (COUNT XVI)

Plaintiff's claim of Factual Disputes as to Material Facts is not a valid cause of action but merely a conclusory allegation couched as a cause of action. Plaintiff's claim of Factual Disputes as to Material Facts (Count XVI) is dismissed.

### J.  CLAIMS DISMISSED WITHOUT DISPUTE (COUNTS V, VI, XI, XIII, XV)

In his responsive pleadings, Plaintiff offers no argument in response to Defendants' motion for dismissing Counts V, VI, XI, XIII, and XV. Additionally, Defendants point out that Plaintiff even concedes that "there is no private right of action to challenge inventor-ship of a pending Patent" before this Court.[46] The Court therefore dismisses Plaintiff's claims of Necessity to Correct Inventor On a Patent/Trust Rights (Count V), Misappropriation of An Invention and Patent Rights (Count VI), Common Law Theft (Count XI), Breach of Covenant of Good Faith and Fair Dealing (Count XIII), and an Injunction (Count XV).

---

[44] AS 09.17.020(a).

[45] *Perotti v. Corrections Corp. of Am.*, 290 P.3d 403, 411 (Alaska 2012).

[46] Docket 120 at 70.

## V. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim at **Docket 87.** Additionally, the Court **DENIES** Plaintiff's Motion for Hearing at **Docket 126** and Plaintiff's Motion for Leave to File Surreply at Docket **127** as moot.

**IT IS SO ORDERED** this 5th day of March, 2015.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE